## Commonwealth of Pennsylvania et al. v. Groezinger et al.

Argued March 6, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and JAMES, JJ.

*Gerald G. Dolphin,* for appellant.

*M. D. Mackie,* for appellee.

OPINION BY CUNNINGHAM, J., July 13, 1934:

It is apparent from an examination of the original record in this case that there has been considerable

litigation in the court below growing out of the alleged failure of Joseph J. Groezinger, an alderman in and for the 17th Ward of the City of Scranton, to make faithful application of certain sums of money collected by him in his official capacity. A motion was filed to quash the present appeal upon the grounds that appellant failed to print relevant pleadings, opinions, docket entries, etc., in accordance with our rules. An examination of its paper book discloses a lack of full compliance with our rules, but as this appeal arose out of only one branch of the litigation and as sufficient has been printed to give a clear understanding of the only question here involved, we dismiss the motion to quash.

National Surety Company now appeals from a judgment entered against it in the court below for want of a sufficient affidavit of defense to a suit upon bonds given by it to the Commonwealth of Pennsylvania to secure the faithful performance by Joseph J. Groezinger of his duties as alderman in the 17th Ward of the City of Scranton.

Material and uncontroverted facts appearing from the averments in the statement of claim and the admissions in the affidavit of defense are these: During the period from February, 1930, to December, 1933, Groezinger was serving in the above mentioned office with appellant as his surety upon bonds containing this condition:

"Now the condition of this obligation is such that if the above bound Joseph J. Groezinger as aforesaid, shall and will from time to time and at all times during his said term justly and faithfully discharge the duties of the said office and shall and will make faithful application of all money that shall come into his hands as such alderman according to law, then this obligation to be void, otherwise to be and remain in full force and virtue."

J. S. Thomas was the tax collector of the Borough of Blakely, Lackawanna County, and, as such, brought suits before Groezinger against nineteen tax payers for taxes alleged to be due from them in varying amounts, but aggregating $1,185.90. It is averred in the statement that "the said alderman, Joseph J. Groezinger, has collected [a specified sum from each of nineteen named tax payers] ...... and has refused to pay over the said amounts to J. S. Thomas, although repeatedly requested to do so" etc.

It is admitted in the affidavit of defense that the aggregate sum of $1,185.90 came "into the hands of the said alderman" as collections made by him on account of judgments obtained in the suits brought by Thomas against the tax payers named in the statement. The only defense attempted to be interposed is that the money did not come into the hands of Groezinger "according to law," because in seventeen instances the suits were brought by Thomas in violation of Section 50 of the Act of April 15, 1834, P. L. 509, 519, (as modified by Section 3 of the Act of April 11, 1848, P. L. 517, 524), which legislation provides, in substance, that it shall not be lawful for any tax collector to institute a suit for the recovery of any tax in any court, or before any alderman, etc., prior to the expiration of his warrant. The modification made by the Act of 1848 is that, unless the collector has been legally exonerated therefrom, he may sue for and recover due and unpaid taxes after the expiration of his warrant "as other debts of like amount are now by law recoverable."

As to the remaining two judgments, it is averred in the affidavit that, although the suits were brought after the expiration of his warrant, Thomas had "never settled his duplicate with the borough officials in regard to said tax claims" etc.

On January 25, 1933, the court below, in an opinion

by LEACH, J., made absolute the use-plaintiff's rule for judgment for want of a sufficient affidavit of defense and entered judgment in favor of the Commonwealth and to the use of J. S. Thomas in the amount of $1,185.90.

Assuming, as we must for the purpose of this appeal, the truth of the averments that seventeen of the suits were brought before the tax collector's warrant had expired and the truth of the averments relative to the remaining suits, we are unable to see how appellant can successfully defend upon this ground. We agree with the court below that, under well established principles, this surety cannot thus attack the judgments collaterally. It was not a party to any of the suits; it is not concerned with any rights the defendants therein may have had, if asserted at a proper time and in a proper manner. It bound itself that Groezinger would at all times during his terms of office "justly and faithfully discharge" the duties thereof and "make faithful application of all money that shall come into his hands as such alderman according to law." The construction we are asked to place upon the bonds is entirely too narrow. Admittedly the moneys in question came into his hands "as such alderman" i. e., solely because he was exercising that office. The plain undertaking of appellant was that he would "justly and faithfully discharge the duties of [his] office;" his failure to pay over to the plaintiff in the judgments the amounts he collected thereon was a clear breach of this undertaking. We need not consider whether the phrase, "according to law," was intended to relate to the "application" by Groezinger of all money coming into his hands in his official capacity, rather than to the manner in which he received it.

Granting that the suits may have been premature, the admission by appellant that Groezinger received

their proceeds under color of his office and the absence of an averment that he had made "faithful application" thereof rendered the affidavit insufficient to prevent a summary judgment.

The adoption of appellant's contention would create an intolerable situation. It would open the door for sureties on such bonds to deny liability for misapplications by their principals by asserting that process had not been properly served or was defective in form, that a cause of action had been alleged of which an alderman did not have jurisdiction and many other matters, affecting the validity of the proceedings as between the parties thereto, but as to which the surety is a stranger. The assignments are without merit and are overruled.

Judgment affirmed.