72 N.J. Super. 34 (1962)
178 A.2d 50
CAROL M. KRAYNICK, AN INFANT BY HER GUARDIAN AD LITEM, MARGARET E. KRAYNICK AND MARGARET E. KRAYNICK, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
NATIONWIDE INSURANCE COMPANY, A CORPORATION OF THE STATE OF OHIO, DEFENDANT-APPELLANT, AND
JOHN TASKO, PLAINTIFF-RESPONDENT,
v.
NATIONWIDE INSURANCE COMPANY, A CORPORATION OF THE STATE OF OHIO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1961.
Decided January 26, 1962.
*36 Before Judges CONFORD, FREUND and LABRECQUE.
Mr. Thomas C. Jamieson, Jr., argued the cause for appellant (Messrs. Jamieson, Walsh and McCardell, attorneys).
Mr. George L. Pellettieri argued the cause for respondents Kraynick (Messrs. Pellettieri & Rabstein, attorneys).
Mr. Mark E. Litowitz, attorney for respondent Tasko.
*37 The opinion of the court was delivered by FREUND, J.A.D.
The plaintiffs, Carol M. Kraynick, an infant, and John Tasko, recovered judgments in the Superior Court, Law Division, for $62,000 and $13,000 respectively, against Richard W. Rodgers, a resident of Pennsylvania, for personal injuries caused by his negligent operation of his automobile in Trenton, N.J. The defendant herein, Nationwide Insurance Company (Nationwide), had issued to Rodgers in Pennsylvania an automobile liability insurance policy with limits of $10,000 and $20,000. This action was brought to recover the policy limits on the unsatisfied judgments. Nationwide denied liability on the ground that Rodgers had failed to cooperate as required by the terms of the policy. The court submitted this issue to the jury which found for the plaintiffs; hence the present appeal.
The cooperation clause in Rodgers' policy reads as follows:

"POLICYHOLDER'S DUTIES
"The Policyholder or other person entitled to protection or someone on his behalf shall:

* * * * * * * *
(4) assist the Company in all respects in connection with any claim or suit, including examination under oath concerning any claim and the exhibition and protection of any damaged property insured hereunder."
The automobile accident occurred on May 19, 1958 and Rodgers promptly notified Nationwide. He was interviewed on three occasions by the insuror's investigator and gave him two written statements concerning the details of the accident, one dated May 27, 1958 and the other dated July 29, 1958. The summons and complaint in each case were received by Nationwide from Rodgers and then forwarded to defendant's attorneys, who filed answers and appeared in defense of the actions. In its letters of acknowledgement of the process to Rodgers, Nationwide wrote: "It is absolutely essential that you keep us advised at all *38 times of your correct current address. If the above address is not correct, or should you move from the same, please notify us immediately." At about the end of January 1959 letters addressed to Rodgers by defendant's attorneys were returned with postal notations, "Insufficient address," "Not at this address," "Moved No Ad." Subsequent efforts by defendant to locate Rodgers proved unsuccessful. An investigator of defendant made numerous personal trips to Rodgers' only known address where his wife and a son or stepson resided, but received no helpful information as to his whereabouts. He inquired at diners where he had worked or, apparently, might be thought to have been working. He inquired of neighbors on the same street, but all to no avail. Rodgers' wife told an investigator he had telephoned from a railroad station in New York, but the sustaining of objections by the court to plaintiffs' efforts to furnish more information prevented an evaluation of whether defendant could have inquired further on this slim lead.
On December 7, 1959, when the plaintiffs' injury cases came on for trial, Nationwide, with leave of court, withdrew from the defense on the ground of Rodgers' disappearance and breach of the cooperation provision of the policy. After trial of the negligence issue, the jury rendered its verdicts, and judgments were entered thereon as already noted.
On this appeal, Nationwide urges that the trial court erred in refusing to grant judgment in its favor and in the exclusion of evidence pertaining to defendant's efforts to locate Rodgers, as well as in other alleged respects.
The insurance policy having been executed and delivered to Rodgers in Pennsylvania, the substantive law of that state applies. Buzzone v. Hartford Accident and Indemnity Co., 23 N.J. 447, 452 (1957); Pennsylvania Threshermen & F.M. Cas. Ins. Co. v. Owens, 238 F.2d 549, 551 (4 Cir. 1956); State Farm Mutual Automobile Ins. Co. v. Palmer, 237 F.2d 887, 891, 60 A.L.R.2d 1138 (9 Cir. 1950).
*39 The "cooperation" clause in an automobile liability insurance policy is a material condition of the contract. Pearl Assur. Co. Ltd. v. Watts, 58 N.J. Super. 483, 490 (App. Div. 1959); Cameron v. Berger, 336 Pa. 229, 7 A.2d 293, 295 (Sup. Ct.), affirming 132 Pa. Super. 484, 1 A.2d 529 (Super. Ct. 1938). It is designed generally to protect the interests of the insuror and to prevent collusion between the insured and injured persons, Kindervater v. Motorists Casualty Ins. Co., 120 N.J.L. 373, 376 (E. & A. 1938); as well as to enable the insuror to determine whether there is a genuine defense, 8 Appleman, Insurance Law & Practice (1942), § 4774, p. 159. "The purpose of the cooperation clause is to constrain the assured to cooperate in good faith with the insurance company in the defense of claims." American Surety Co. v. Diamond, 1 N.Y.2d 594, 599, 154 N.Y.S.2d 918, 136 N.E.2d 876, 879 (Ct. App. 1956).
Both New Jersey and Pennsylvania, as well as the great weight of authority, place the burden of proving lack of cooperation upon the insuror. Fagan v. Hartford Accident & Indemnity Co., 114 N.J.L. 281 (E. & A. 1935); Tuder v. Commonwealth Casualty Co., 10 N.J. Misc. 1206, 163 A. 27 (Sup. Ct. 1932); Schmittinger v. Grogan, 402 Pa. 499, 166 A.2d 524 (Sup. Ct. 1961); Pennsylvania Threshermen & F.M. Cas. Ins. Co. v. Owens, supra (238 F.2d, at p. 552). Pennsylvania, in particular, places the burden on the insuror of proving the breach of the condition and of demonstrating that the breach was such as to result in substantial prejudice and injury to its position. Schmittinger v. Grogan, supra; Cameron v. Berger, supra.
We are satisfied that defendant has proven, as a matter of law, that its insured was guilty of a prima facie breach, viz., Rodgers' non-appearance at the trial preceded by his disappearance, as demonstrated by defendant's numerous unsuccessful attempts to locate him during its pretrial preparation. But necessarily allied to the substantive law question of breach in Pennsylvania is whether the insuror conducted *40 a reasonable and adequate search to locate the insured in time for trial. Cf. Tomlison v. Goldberg, 121 Pa. Super. 125, 182 A. 765, 766 (Super. Ct. 1936). In this regard, it has been observed:
"The problem of non-cooperation has a dual aspect: not only what the assured failed to do, but what the insurer on its part did to secure co-operation from an apathetic, inattentive, or vanished policy holder, must be considered. Liability insurance is intended not only to indemnify the assured, but also to protect members of the public who may be injured through negligence. * * * It would greatly weaken the practical usefulness of policies designed to afford public protection, if it were enough to show mere disappearance of the assured without full proof of proper efforts by the insurer to locate him." Pennsylvania Threshermen & F.M. Cas. Ins. Co. v. Owens, supra (238 F.2d, at pp. 550-551)
Moreover, the Pennsylvania rule is that where only oral testimony is adduced on a material issue, the credibility of the witness is for the jury. Thus, in Zenner v. Goetz, 324 Pa. 432, 188 A. 124 (Sup. Ct. 1936), the insuror denied liability because its insured's car was carrying passengers for hire, a non-rated risk. Two of the alleged passengers testified for the insurance company that they were in the insured's automobile at the time the accident occurred. Their testimony was not rebutted. Nevertheless, the question of breach was held to be for the jury, since oral testimony alone supported the insuror's defense. As the New Jersey rule in comparable circumstances is substantially similar, Ferdinand v. Agricultural Ins. Co., 22 N.J. 482, 62 A.L.R.2d 1179 (1956), Fagan v. Hartford Accident & Indemnity Co., supra (114 N.J.L., at pp. 284-5), it makes no difference whether the rule in question is regarded as substantive or procedural, for purposes of choice of law.
We are persuaded that no jury issue was raised by plaintiff as to whether defendant sufficiently established the prerequisite to avoidance of liability of substantial prejudice and injury. Since Rodgers, if available, was an invaluable, if not the only witness to testify to the absence of negligence *41 on his behalf and to plaintiffs' contributory negligence, necessarily his failure to be present to assist in the defense of this action was substantially prejudicial and injurious. Cameron v. Berger, supra.
Our consideration of whether defendant established as a matter of law its additional condition prerequisite to a successful avoidance of liability on grounds of failure of cooperation  a reasonably adequate search for the assured  will be facilitated by first passing upon certain of defendant's grievances in respect of exclusion of evidence. The defendant urges that the trial court committed error in excluding from evidence, on grounds of hearsay, conversations between defendant's investigator and members of the insured's family, and written statements secured from neighbors, pertaining to information leading to the whereabouts of Rodgers. The trial court also excluded letters addressed to the insured from the defendant's investigator and attorney, as well as correspondence between the investigator, the attorney and Nationwide. All these letters related to efforts made to locate the insured but were excluded as being hearsay and containing self-serving declarations. Further error is alleged in the failure to receive into evidence, as hearsay, the two signed statements made by Rodgers.
The weight of authority, as well as sound principles of reason, is to the effect that questions of evidence are usually governed by the law of the forum, People v. Wells, 380 Ill. 347, 44 N.E.2d 32, 142 A.L.R. 1262 (Sup. Ct. 1942); 1 Wigmore, Evidence (3d ed. 1940), § 5, p. 159; Restatement, Conflict of Laws, § 597, p. 714 (1934). Therefore, the New Jersey authorities control the admission of evidence. Cf. Abety v. Abety, 10 N.J. Super. 287 (Ch. Div. 1950).
Defendant contends that the hearsay rule does not apply to the investigator's testimony or to the insured's own statements. Generally, the hearsay rule merely forbids the use of an extra-judicial utterance as an assertion to evidence the fact asserted. Baker v. Baker, 128 N.J.L. 544 (Sup. *42 Ct. 1942); 6 Wigmore, supra, § 1788, p. 234. But if that utterance is offered, as in the instant case, without reference to the truth of the matter asserted, the hearsay rule has no application. 6 Wigmore, supra, § 1766, pp. 177-8. Accordingly, the investigator's testimony should have been permitted since, without it, the jury could not have adequately decided whether the defendant's attempts to locate Rodgers were reasonable under the circumstances. The hearsay rule should not apply when evidence of fruitless inquiry merely goes towards demonstrating diligence on the part of the inquirer. Jardine Estates v. Koppel, 24 N.J. 536, 545 (1957), McCormick, Evidence (1954), § 228, p. 469. Professor Wigmore has stated the applicable rule as follows:
"As evidence of the witness' death, absence, or non-residence, replies received during the search ought to be admissible; whether or not they are testimony in themselves, they serve as circumstances indicating due diligence of the party seeking the witness."
Also see note 4:
"This is one of the spots in the law where the inflexible technical application of the Hearsay rule most often defies common sense." 5 Wigmore, supra, § 1414 (2), p. 190.
Nor would the admission of Rodgers' two statements have violated the hearsay rule. Again, as with the investigator's testimony, they were not offered to establish the truth of their substantive contents. They were only introduced to indicate that the insured, had he been a witness at the first trial, would probably have given testimony that would have been important in enabling the insurance company to resist the plaintiffs' claims. The statements tended to indicate that the motorcycle driven by plaintiff Tasko, and on which the infant plaintiff Kraynick was a passenger, darted from behind a truck and into Rodgers' path on a narrow bridge. Since Nationwide was obliged to show that it had been prejudiced by Rodgers' unavailability, it certainly was entitled to offer these statements as some proof *43 that it might have been successful in defending the personal injury claims provided he had been present at the trial, as fairly required by the terms of the policy. Compare Sutera v. Provident Ins. Co. of N.Y., 67 N.J. Super. 554, 563 (App. Div. 1961), where it was held that statements made out of court but offered in court as evidence of the conduct of the assured that are claimed to constitute failure of cooperation are not necessarily hearsay.
The correspondence between the insurance company and its agents, although perhaps technically self-serving and containing some hearsay, should also have been received into evidence. Since the adequacy of defendant's search was a vital issue under the particular circumstances, the reasonableness of that search could be properly appraised by the jury only if it knew of the extent of the information exchanged between Nationwide and its agents as to Rodgers' whereabouts. These letters should also have been received with cautionary instructions to consider them only for purposes of determining the adequacy of the investigation. Compare Randolph v. Employer's Mutual Liability Ins. Co. of Wis., 260 F.2d 461, 465 (8 Cir. 1958), cert. denied 359 U.S. 909, 79 S.Ct. 585, 3 L.Ed.2d 573 (1959). There, telegrams and various letters from the insuror's representatives to the insured which advised him that if he did not appear at the trial the insuror would not be responsible for the conduct of the trial, the costs incurred or judgment obtained, were admitted into evidence over the objection that they were self-serving declarations. Their admission was sustained on the ground that they were material on the issue of whether the insured had proper notice of the trial and to establish that the insuror had requested him to be present.
Defendant also alleges the trial court erred in refusing to instruct the jury in certain respects. We observe that only one specific objection to the charge was made, R.R. 4:52-1, namely, that the question of prejudice should not have been submitted to the jury since it should *44 have been decided in defendant's favor as a matter of law. For reasons stated above, this objection was correct. For the benefit of the trial judge upon remand, we also note that the failure to instruct the jury, as requested, that the insuror was obliged to make only reasonable efforts to locate Rodgers and that the rights of the plaintiffs can rise no higher than those of the insured, should be granted. Those two requests embodied applicable Pennsylvania principles of law and should have been included in the charge to the jury. Cf. Cameron v. Berger, supra.
Having reviewed the excluded evidence, we turn again to a consideration of whether Nationwide's search for Rodgers was shown to be reasonable and adequate as a matter of law. If so, in view of our other conclusions, Nationwide would be entitled to a judgment as a matter of law. Defendant relies in this regard upon Cameron v. Berger, supra, and Schmittinger v. Grogan, supra, in both of which the court found adequacy of search by an insurance company for a missing assured as a matter of law.
The facts concerning the search for the missing assured in Cameron are as follows. On November 18, 1931 a collision occurred between the automobiles driven by Mrs. Cameron and Mrs. Berger. They were the only eyewitnesses to the accident. Mrs. Berger promptly reported the incident to her insurance company and was requested by the insuror to forward to it all communications and legal papers that might be served on her. Thereafter she was interviewed by two of insuror's representatives. In February 1932 she disappeared to avoid arrest and prosecution as a "pow-wow" or "hex doctor" and for larceny by bailee. Before she left she had informed one of the insuror's representatives that she was going to institute suit against Mrs. Cameron. But the representative's attempts to contact her again from February to the following October were unsuccessful. In June 1932 Mrs. Cameron and another sued Mrs. Berger for injuries arising from the accident. Process was served on the Secretary of Revenue for the Commonwealth of *45 Pennsylvania. It was not until October 1932 that the defendant's insuror obtained any knowledge of that action. It then immediately addressed letters to counsel to both plaintiffs and to its assured that it declined to assume liability. The registered letters addressed to defendant were returned unclaimed.
In its attempts to locate Mrs. Berger, the insuror inquired for her at her residence and wrote to her both there and in care of her post office box. The letters were returned unclaimed. Frequently, inquiries were also made of the state police and the district attorney. Several law enforcement authorities made extensive searches as to Mrs. Berger's whereabouts with reference to the criminal charges against her. This involved interviewing hundreds of persons and broadening the search to include several other states and Cuba. The insuror, however, had not inquired of these authorities until shortly before the garnishment suit against it was tried.
The Supreme Court held, in light of all these circumstances, that Mrs. Berger's report of the accident to her insuror and her assistance in the preliminary negotiations did not discharge her obligation under the cooperation clause. Since she was both sole and essential witness for the insuror, her voluntary disappearance left it without a defendant or a defense. Under those circumstances she was precluded from indemnification and Mrs. Cameron's claim on the garnishment was denied as a matter of law.
The facts in the Schmittinger case in respect of the search for the missing assured, Grogan, are not set forth in the opinion of the Supreme Court cited above. The Superior Court opinion on a different point does provide some of the facts. Schmittinger v. Grogan, 182 Pa. Super. 399, 128 A.2d 114 (Super. Ct. 1956). We therefore requested the parties to provide us with the record on appeal therein and with further briefs on the question of the similarity of the facts there with those here involved, and on the question whether the holding there as to the adequacy *46 of the search was not compelling of a similar holding here. (We requested a similar investigation of the facts of the Cameron case from the same viewpoint.) We have received the data and briefs requested and considered them.
It appears that the facts in reference to the search by the insurance company to locate the missing assured in Schmittinger are as follows. The Schmittingers and Grogan were involved in an automobile accident on March 30, 1953. An action was thereafter instituted by the Schmittingers. Grogan's insuror could not locate him until October 1953, when he executed verified pleadings at the insuror's attorney's office alleging that the accident was not caused through his fault. When the case was set down for trial, the insuror's attorney wrote to Grogan telling him to call to arrange an appointment. There was no response to this letter nor to another letter sent by a different company representative. Several intra-company letters and memorandums, as well as investigator's reports, all indicated that the insuror's attempts to find Grogan were fruitless. The investigators had checked through the neighborhood and in other cities. On the basis of this evidence the court held the insuror had proved, as a matter of law, that the defendant had breached the cooperation clause and was substantially prejudiced and injured thereby.
Although in many respects the efforts of the defendant in the present case to find the assured parallel those of the insurance companies in the Cameron and Schmittinger cases, we are unable to make a positive determination as to whether they compel a judgment for the defendant in the present case because of the absence from the record before us of the documentary and oral proofs erroneously excluded from evidence by the trial court, as indicated above. The availability of those proofs is essential for purposes of appraisal of the sufficiency and adequacy of defendant's search effort.
In particular, the adding to defendant's proofs of the excluded documentary evidence may have the effect, in conjunction with the full story of the activities of defendant's *47 investigator, Kash, and of what he learned, of overcoming the effect of Zenner v. Goetz, supra, in respect of whether the factual issue was required to be submitted to the jury. It is to be noted that the Pennsylvania court cited the Zenner case in both Cameron and Schmittinger and nevertheless found for the insurance companies as a matter of law in both cases.
Reverse and remand for a new trial limited to the factual issue of adequacy of investigation.