114 N.J. Super. 483 (1971)
277 A.2d 242
THOMAS DOUGHERTY, PLAINTIFF,
v.
THE HANOVER INSURANCE CO., ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 30, 1971.
*484 Mr. Antonio F. Doganiero for plaintiff.
*485 Mr. G. Paul Crawshaw for defendants Hanover Insurance Co. and Josephine Conville (Messrs. Taylor, Bischoff, Williams & Martin, attorneys).
Mr. James J. Casby, Jr. for defendant, Mert Francis Conville and The Unsatisfied Claim and Judgment Fund Board. (Messrs. Casby & Garrigle, attorneys).
HEINE, J.S.C.
Having recovered a judgment against Mert Francis Conville for injuries arising out of automobile negligence, plaintiff brings this insurance coverage action, in the alternative, against Hanover Insurance Co. and the Unsatsified Claim and Judgment Fund. At the time of the accident Conville was operating his wife's vehicle, which was insured by Hanover. Prior to trial and following the occurrence of events which are described later in detail, Hanover, citing lack of cooperation, disclaimed all responsibility for either coverage or representation. Thereafter, Conville's defense was handled by the Fund. The sole issue before the court centers upon an automobile liability assured's covenants of cooperation.
On March 20, 1964 Conville, driving his wife's vehicle, struck plaintiff's automobile under aggravating circumstances  passing through a stop street and crossing three one-way lanes of a major highway before colliding  justifying Conville's being charged with both careless driving and driving under the influence of intoxicating liquor. The charges required Conville to post bail. Hanover was notified of the accident through Conville's personal insurance agent within two days after the event and subsequently reimbursed Conville for the cost of the bail he had posted. Shortly thereafter Hanover sent plaintiff a claim form which he ignored. In the face of that silence Hanover closed its file, only to re-open it about 14 months later when it received a letter of representation from the plaintiff's counsel.
*486 Plaintiff instituted suit against Conville and his wife, and the summons was served at a Stratford, New Jersey, address where it was believed Conville and his wife resided. The suit papers were forwarded to Hanover, which in turn transmitted them to its attorneys. Without contacting either defendant they filed an answer on their behalf. A later attempt to amend the answer to raise lack of jurisdiction by reason of defective service on Conville was unsuccessful. The claim against Conville's wife was dismissed upon her showing that her husband was not driving as either her servant or agent at the time of the accident.
Plaintiff then served interrogatories upon defendant. Following Hanover's unsuccessful efforts to locate Conville  he had apparently left his wife and family  Conville's answer was suppressed. Immediately thereafter Hanover's attorneys successfully moved to be relieved as attorneys for Conville. The Fund then appeared to defend Conville.
It should be noted that between May 1965, when Hanover was presented with a written list of plaintiff's special damages, and January 1966, Hanover's investigative efforts were superficial and, with one exception, primarily conducted through the mails; on one occasion Hanover's investigator personally visited a gas station where he thought Conville was employed. That excursion was fruitless.
Although it is fundamental that the "cooperation" clause in an automobile liability insurance policy is a material condition, Pearl Assurance Co. Ltd. v. Watts, 58 N.J. Super. 483, 490 (App. Div. 1959); Kraynick v. Nationwide Insurance Co., 72 N.J. Super. 34, 39 (App. Div. 1962); Mariani v. Bender, 85 N.J. Super. 490, 500 (App. Div. 1964), certif. den. 44 N.J. 409 (1965), Hanover has failed to demonstrate that Conville, the assured, deliberately breached the cooperation clause in a material and essential particular. Pearl Assurance Co. Ltd. v. Watts, supra, at 490; accord, Pearl Assurance Co. Ltd. v. Watts, 69 N.J. Super. 198, 206 (App. Div. 1961); Sutera v. Provident Insurance *487 Co., 67 N.J. Super. 554 (App. Div. 1961); Mariani v. Bender, supra, at 500. On the issue of deliberate breach, the carrier retains the ultimate burden of persuasion. Cooper v. Government Employees Ins. Co., 51 N.J. 86, 94 (1968).
While the court acknowledges that in the days immediately preceding trial Hanover was unsuccessful in making contact with its assured, it nevertheless finds that that estrangement was precipitated by Hanover's inaction. Immediately after the accident Hanover did nothing to investigate the accident or contact Conville, save forwarding a proof of claim to the injured victim. It made no effort to uncover evidence when witnesses were available. Moreover, if the carrier had promptly checked out the police report and bail bond, it would have learned that after Conville was taken from the scene of the accident and examined by a doctor, he was charged with driving under the influence of intoxicating liquor, which in and of itself should have apprised a reasonable carrier of particularly serious implications under its liability policy. Additionally, the police report should have motivated them to additional inquiry.
The decision not to investigate the case when the evidence was fresh and the witnesses available was a calculated risk on Hanover's part. It gambled on the outcome and it lost.
Quite apart from the facts which portray an absence of deliberate noncooperation on the part of Conville, and affirmatively suggest an imprudence of Hanover's own making, there is additionally an absence of a showing by Hanover that it performed its reciprocal duties under the cooperation clause. Numerous decisions have discussed the dual nature of the cooperation covenant. See, e.g., Carpenter v. Superior Court in and for County of Maricopa, 101 Ariz. 565, 422 P.2d 129 (Sup. Ct. 1967); Jameson v. Farmers Mutual Auto Ins. Co., 181 Kan. 120, 309 P.2d 394 (Sup. Ct. 1957); 8 Appleman, Insurance Law and Practice, § 4784; 8 Blashfield Automobile Law and Practice, § 342.11. In Imperiali v. Pica, 338 Mass. 494, 156 N.E.2d 44, 47 (Sup. Jud. Ct. 1959), the court neatly discussed that proposition:
*488 * * * the "problem of non-cooperation has a dual aspect: not only what the assured failed to do, but what the insurer on its part did to secure co-operation from an apathetic, inattentive, or vanished policy holder, must be considered." Pennsylvania Threshermen & Farmer's Mut. Cas. Ins. Co. v. Owens, 4 Cir., 238 F.2d 549, 550. * * * It has been held, in accordance with the language quoted above, that an insurer cannot be relieved of liability because of an alleged breach of a cooperation clause by the insured in a situation where it has not itself exercised diligence and good faith. [Citations omitted] Elementary principles of justice and fair dealing require such a rule. The obligations under a cooperation clause are reciprocal. The insured must cooperate; but the insurer is under a duty to exercise diligence and good faith in bringing that about. The demand for cooperation by the insurer must not be unreasonable. There is the additional circumstance in cases of this sort that an attorney undertaking the defense of the case covered by the policy is an attorney for both the insurer and the insured and owes to each a duty of good faith and due diligence in the discharge of his duties. The rights of one cannot be subordinated to those of the other.
There is no showing that Conville knew of any duty on his part to keep Hanover informed of his whereabouts or knew that Hanover sought his cooperation in connection with the lawsuit. In contrast, the facts in Kraynick v. Nationwide Insurance Co., supra, show that there the insured was explicitly notified to keep his carrier advised of his correct current address.
In the same vein, and with even more onerous implications than those arising out of Hanover's failure to advise Conville of his duties under the policy, Hanover, by filing an answer on Conville's behalf, subjected Conville to the jurisdiction of the court and to the possibility of judgment. While it is true that Hanover may at one time have had the opportunity to attack the jurisdiction of the court over the person of Conville, it did not raise that defense in a timely manner. Consequently, and apart from the implications of its other neglect, Hanover's affirmative conduct served to place Conville in greater jeopardy than his own conduct would have otherwise produced. 7A Appleman, op. cit., § 4693; Cf. Imperiali v. Pica, supra.
Hanover argues that this court should not hear any evidence that in any way refutes the sheriff's return in the *489 original suit, since this would be a collateral attack upon the return. This evidence was not received for that purpose; it was received for the purpose of showing what Hanover did or did not do. Such evidence is material to the issue, the same as the action or inaction of the insured. Cf. Kraynick v. Nationwide Ins. Co., supra.
The court considers Hanover estopped from raising the issue of noncooperation. 8 Appleman, op. cit., §§ 4693, 4784, 4786; cf. Nationwide Mutual Ins. Co. v. Tillman, 249 Miss. 141, 161 So.2d 604 (Sup. Ct. 1964).
Parenthetically, the court cannot overlook that insofar as the insurer may rely on its defense of noncooperation, it is very much to the insurer's benefit that the insured not be located. Tuder v. Commonwealth Cas. Co., 10 N.J. Misc. 1206, 163 A. 27 (Sup. Ct. 1932); Carpenter v. Superior Court, supra; Bachman v. Monte, 326 Pa. 289, 192 A. 485 (Sup. Ct. 1937). It has not gone unnoticed that when the Fund entered the case it very shortly thereafter discovered Conville to be an inmate of the Camden County Hospital.
Lastly, as pointed out above, the breach of a condition of cooperation must result in a "likelihood of appreciable prejudice." Cooper v. Government Employees Ins. Co., supra. In the underlying negligence action, although contested, the issue of liability was virtually an admitted fact, and one which could have easily been evaluated in Conville's absence. The only significant dispute requiring resolution was the extent of plaintiff's injuries and damages. Conville, himself, could have made very little meaningful contribution to the resolution of those issues. Accordingly, Conville's absence did not appreciably prejudice Hanover's position in the meaningfully litigated phases of the case. See Allstate Ins. Co. v. Grillon, 105 N.J. Super. 254 (App. Div. 1969).
For these reasons I find that plaintiff is entitled to judgment against the Hanover Insurance Company. Judgment is also entered in favor of the Fund against Hanover for the expenses and fees of representation in the stipulated sum of $1050.